WILLIAM BONDS, Appellant, *vs.* ABRAHAM GRAY, Respondent.

*Petition to revoke Will—Verdict for Appellant, and Motion for New Trial.*

1. On an appeal from the court of ordinary, upon a motion to set aside a will, that has once been proved; the party, attacking the will, holds the affirmative, and must open and conclude.

2. The propounder of the will, in the above case, cannot dismiss the proceedings.

3. In an appeal, on a caveat to the *probate* of a will, the propounder of the will holds the affirmative. *Semb.*

4. The subscribing witness to a will may prove, as part of the *res gestæ*, the declaration of the testator, at the time of attestation, that the instrument *was his will*, in order to show that such a will was made.

5. Such proof may go to the Jury, as evidence of the revocation of a former will, which could not be found, after testator's death, but of which a copy has been established, in lieu of the original.

6. It being shewn that a certain will was executed; evidence, that it remained in the testator's possession, and could not be found, after his death, raises a presumption, that it was revoked.

7. When there is conflicting evidence before the jury, no rule of law violated, and no manifest injustice done; a new trial will not be granted, because the proof preponderated against the verdict.*

This was an appeal from the Court of Ordinary, upon a petition, and Rule Nisi, granted in said Court, calling upon the respondent, who was the executor of Sarah Gray, to shew cause, why a paper, which had been proven and admitted to record, as the last will and testament of Sarah Gray, deceased, should not be set aside, and declared void, upon the following grounds:

1st. Because the original will, of which it is a copy, was revoked, before the death of the testatrix.

---

* See, Bagshaw *vs.* Dorsett, *Ante,* 42.   Davis *vs.* Hale, *Ante,* 82.

[Bonds *vs.* Gray.]

2nd. Because, at the time of the death of the testatrix, she left no will, having revoked, annulled, and destroyed, the aforesaid original will.

3rd. Because said Sarah Gray died intestate.

4th. Because the aforesaid copy is a forgery, she having left no will at her death.

5th. Because, if ever the said Sarah Gray did make a will, she revoked and destroyed it, before her death, there being no will of her's then in existence.

On the trial of this Rule, in the Court below, the will was established; and from that decision, an appeal was entered, to this Court. When the case come up for trial, at the March term, 1841, a question arose, as to which party had the right to commence and conclude the evidence, and argument : and the Court, then, in accordance with what it understood to be the practice, determined that the propounder of the will was the actor, and as such, must go on, and prove the will, and was, therefore, entitled to the conclusion. The respondent, not being prepared with evidence to support the will, moved to to dismiss his case. This motion being resisted, the Court determined that he had no right to dismiss it. A verdict was then found for the appellant, setting the will aside. A motion was then made, for a new trial, upon the ground that the Court erred, in deciding that the propounder of the will had not the right to dismiss his case. The Court refused the motion, upon this ground, but granted it upon another, to wit, that the Court erred, in deciding that the propounder of the will was the actor, and as such compelled to make out his case, by proving the will again. Some dissatisfaction having been expressed, with the decision of the Court, upon this point, and although the Court was well satisfied of its correctness, yet it was unable, at the time, to refer to any authority, in point, in support of it. It has since, however, found an adjudicated case, which fully sustains it. It is the case of Joseph Southerlin, et al. appellants, *vs.* James Kinney, et al. reported in *Rice's S. C. R.* 35. That case, like this, was an appeal from the Court of Ordinary, upon the probate of the will, where the executor had been cited before the Ordin-

ary, to prove the will, in solemn form. The Ordinary heard the case, and decided in favor of the will. The parties, protesting against the will, appealed to the Court of Common Pleas. There it was contended, that the executors should go on, and prove the will, in the first place; but the Court determined that the appellants were the actors, and entitled to open and conclude, both in evidence and argument. The case was tried, and no evidence was given, to impugn the will, and the Jury found for the appellees. The appellants then moved for a new trial, and the principal ground of error alleged was, that the Court erred, in deciding that the appellants were bound to go on, as the actors in the issue, without the executors proving the will, in the first place. The Court of Appeals refused the motion, and determined, that the Court of Common Pleas had decided this point, correctly; and, in pronouncing the decision of the Court, the Judge remarks—"The appelleee has the decision of the " Court below, in his favor; his rights are fixed. Until that decision " is removed, his position is purely passive." It will be remarked, that the case under consideration, and the one in Carolina, are precisely similar. In both, the will had been proven, in common form, and probate granted, and admitted to record: and the executor was cited before the Ordinary, to prove the will in solemn form. A decision was made, in favor of the will, and the party, protesting against it, appealed, and was held to be the actor. But, upon reflection, I am inclined to think that, where the contest arises, upon the first application to prove a will, and an appeal is entered, before the will is admitted to record, the facts are different; and the other party might properly be considered the actor.

Upon the second trial, in the Superior Court, of the case under consideration, the Jury found the following verdict:—" We, the Jury, find the will propounded not to be the last will and testament of Sarah Gray, deceased." The respondent's counsel then moved for a new trial, upon the following grounds:

1st. Because the Court erred, in permitting the declaration of the testatrix, Sarah Gray, to be given in evidence, to shew she had made another will, subsequent to that propounded by respondent, as evidence of a revocation of the first will.

2nd. That the verdict of the Jury was contrary to both Law and evidence.

[Bonds *vs.* Gray.]

In order to understand the nature and admissibility of this testimony, and the force of the objection, it must be considered, in reference to the other testimony, and the facts of the case. The paper, propounded as the will, purported to be a copy of the will of Sarah Gray, deceased, bearing date on the 14th day of June, in the year 1834, which had been established, by an order of the Superior Court, in lieu of the lost original. It was proven, first, on the part of appellant, by Robert Westmoreland, in substance, that he heard Abraham Gray, the respondent, say, shortly after the death of testatrix, that he had searched, and could find no will, nor could he find any notes, or other valuable papers, known to be in possession of testatrix, previous to her death, and that he had got other persons to examine, and could find none. On the part of respondent, John G. and Calvin S. Westmoreland, two of the subscribing witnesses, were sworn, who proved the execution of the original will, and that testatrix, at the time of executing the same, was of sound and disposing mind. The minutes of the Court were then read, to prove the establishment of the copy, in lieu of the original; and the will before the Court was identified, by Robert Heflin, former Clerk, to be the paper, established by said order. It was proven, on the part of appellant, that Gray, the respondent, moved his mother from South Carolina; that she lived with him, and that he said, if the other heirs would pay him, for the trouble he had been at, in moving his mother, from South Carolina, he would divide with them. One of the Westmorelands stated, that the old lady lived with Gray, and that he managed her affairs, and that she was about seventy years of age. Edwin Drury, who was also a subscribing witness to the will, and whose testimony had been taken by interrogatories, testified that he wrote, and witnessed, a will made by Mrs. Sarah Gray, in which she gave all her property to Abraham Gray, with the exception of five dollars, to each of the other heirs; and that the same will was witnessed, by John G. and Calvin S. Westmoreland; that he did not recollect the precise date of said will; and that he never heard Mrs. Sarah Gray say any more, than sometime after the above named will was made, he was called on to witness an instrument of writing, which she acknowledged to be her will; but witness did not read, or hear said instrument read, as she objected to having it read; and that Elisha Kendall was a witness to the above named instrument, as well as witness. The last part of this testimony is that, which is objected to, and

[Bonds *vs.* Gray.]

forms the first ground of this motion. It is stated in the rule, that the Court erred, in permitting the declarations of the testatrix to be given in evidence, to shew she had made another will, subsequent to that propounded, as evidence of a revocation of the first will. I think, then, the rule assumes that to be true, which is not warranted, by the testimony. It was *not* proven, by the declarations of testatrix, that she had made another will; but the fact was proven by Drury, one of the subscribing witnesses, and who was called in for that purpose, that she did make an instrument of writing, which she acknowledged to be her will. Now, the fact, that she did execute an instrument, is proven by competent testimony; and not by her declarations, as the rule assumes. But it is said that there is no evidence that it was a will, except her declaration. This is true; and the question then arises, as to the admissibility of such declaration. Mr. Starkie says, in his Evidence, 1 vol. 39, "that all the surrounding "facts of a transaction, or, as they are usually termed, the *res gestæ*, "may be submitted to a Jury, provided they can be established, by "competent means, and afford any fair presumption, or inference, "as to the question in dispute." And Mr. Greenleaf says, in his Treatise on Evidence, page 121, "that when a person does any act, "his declarations, made at the time of the transaction, expressive of "its character, motive, or object, are regarded as verbal acts, indica- "ting a present purpose and intention, and are therefore admitted as "proof, like any other material facts. They are parts of the *res gestæ.*" If, as the ground, taken for a new trial, assumes, the Court had permitted the bare declarations of the testatrix, made at a subsequent time, to have been given in evidence, to prove the fact, that she had made a subsequent will; there is no doubt it would have been erroneous; but the fact of making the instrument was proven, by the witness, of his own knowledge, and not by the declarations of the testatrix; and then her declarations, as to the nature of the instrument, made at the time of doing the act, are made by the Law a part of the act, and therefore legal evidence. But it is further stated, in the rule, that the declarations of the testatrix, that she had made a subsequent will, were permitted, as evidence of a revocation of the first *will.* There is a wide difference between the *legality* of the testimony, and the *sufficiency* of the testimony to prove a given fact. The making of a subsequent will, expressly revoking a former will, amounts to a revocation. Also, the making of a subsequent will, making a dispo-

[Bonds *vs.* Gray.]

sition of the property, devised in the first will, different, or incompatible with the disposition, made of it by the first will, will revoke a prior *will*. The evidence here was, that she had made a subsequent will; but it did not appear, from the evidence, what the contents of that will were. It could not, therefore, be said to be sufficient evidence, to prove a revocation. But the making of a subsequent will was a distinct fact, which it was competent for the party to prove; and the admission of that evidence, which was competent, cannot be erroneous, merely because every other fact was not proved, necessary to establish a certain state of facts. I am, therefore, of opinion, that the declarations of the testatrix, at the time she executed this instrument of writing, stating that it was her will, constituted a part of the transaction, and were therefore legal evidence. But it is contended, for respondent, that the admission of this testimony would be in violation of the 22d Section of the Statute of Frauds, which declares that no will, in writing, shall be repealed, or altered, by any words, or will by word of mouth only, except the same be, in the life time of the testator, committed to writing &c. I do not conceive that authority at all applicable, to the facts of this case. There is no attempt, here, to repeal, or alter, this will, by word of mouth; but the sayings of the testatrix are not in relation to this will, but in relation to a distinct transaction, when that transaction is being consummated, as to its quality, and are therefore received, as constituting a part of the *res gestæ*.

The second ground is that the verdict was contrary to both Law and evidence. It is a rule of Law, that when there is evidence, on both sides of a case, and no rule of Law is violated, nor manifest injustice done, the Court will not grant a new trial, although there may appear to have been a preponderance of evidence, against the verdict.—*Graham on New Trials*, 380. But they will grant a new trial, upon the ground that the verdict is contrary to evidence, when it is manifestly and clearly so.—*Constitutional R. S. C.* 1 *Vol.* 93.

Let us, then, examine the facts of this case, for the purpose of determining, whether this verdict be contrary to evidence, or whether there be evidence, sufficient to support it. It will be recollected, that this was a copy will, established in place of the original, which was said to be lost. And it is contended, that, having been established

R

[Bonds *vs.* Gray.]

by an order of Court, in the manner which the Law prescribes, it has
all the force and effect of the original.   This is conceded.   But its
being a copy can give it no additional validity.   And the fact, that a
copy has been established, does not prevent the appellant, from
proving any thing, in relation to the original, which would go to
shew, either that it had been improperly obtained, or that it had been
cancelled or revoked.   There can be no doubt, from the evidence,
that the testatrix did, in 1834, make a will; and that the one, under
consideration, is a correct copy of the same.   But the establishing a
copy of what the original will was cannot make it a valid will, if
the original had been cancelled, revoked, or annulled, by any other
means, known to the Law, before the copy was established.   Let us,
then, refer to some of the evidence, in relation to this will.   There
was no proof, that it was in existence, at the time of the death of the
testatrix; but, on the contrary, it was proven, that Gray, the respon-
dent, said that he examined, shortly after the death of the testatrix, and
could find no will.   Now what is the legal presumption, arising from
the fact?   It is laid down in Starkie's Evidence, 3 vol. 1715, that "if a
" will, proved to have been executed, and which, after execution, re-
" mained in the custody of the testator, can not be found, after his death,
" a presumption (according to the practice of Ecclesiastical Courts)
" arises, that he has cancelled the will, and the burthen of proving the
" contrary is thrown on the party, alleging the contrary."   This doctrine
is fully sustained, by the decision of the Court of Errors, in the State of
New York, in the case of Butts *vs.* Jackson, reported in the 6th vol.
*Wendel R.* 173, where the question is very elaborately and ably
discussed, overruling the decision of the Supreme Court, as reported
in 9 *Cowen's R.* 208.   But the reply to this is, that the will has been
established, and here it is, and of as much force as the original would
be, if it were present.   That is true, perhaps, to a certain extent.
But suppose the original was here; would the mere fact of its being
present prove that it had not been revoked by a subsequent will, or
other instrument?   If not, does the fact, that a copy has been estab-
lished, prevent the party from proving, that the original could not be
found, after the death of testatrix?   I think not.   And the fact was
proved, on the trial, and the legal conclusion follows.   I think, there-
fore, when we take into consideration this part of the testimony, to-
gether with the fact, that another will was made, subsequent to this;
that a person was called on to witness it, who had written the first;

[Bonds *vs.* Gray.]

and that she refused to let him read it; and that neither will could be found after her death; the presumption is strong, that she had cancelled both wills, and intended to die intestate. I am not, therefore, prepared to say that there is no evidence, to support the verdict, nor do I consider it manifestly contrary to the evidence; nor can I say, that it is contrary to law.

The motion for a new trial is, therefore, refused.

H. & O. WARNER & HERIE, for the motion; and LATHAM & J. Q. A. ALFORD, contra.